Hubert H. Kuo (CA Bar No. 204036)
Jeffrey T. Gwynn (CA Bar No. 180548)
ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, CA 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

Attorneys for Plaintiffs SHENYANG HONGQIAO, ZHANG YONG SHENG, and LU GUOJIE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

CHINA SHENYANG HONGQIAO OIL PRODUCTION CO., LTD., a Chinese corporation; YONGSHENG ZHANG, an individual; GUOJIE LU, an individual,

Plaintiffs,

vs.

ATLANTIC VENTURES LLC, an Pennsylvania corporation; D2HEALTHCOACH, LLC, a Pennsylvania limited liability company; CAER VISION TECHNOLOGY CENTER INC., a Delaware corporation; CTCI, LLC, a Pennsylvania limited liability company; CAERVISION GROUP, INC., a Maryland corporation; CAERVISION CORPORATION; a Maryland corporation; CAERVISION, a Maryland corporation; JACK ZHANG, an individual; and JULIET HONG ZHANG, aka JULIET LUO, an individual,

Defendants.

Case No. 8:17-cv-1675

Assigned to Hon. Judge
Courtroom:

**COMPLAINT FOR:**

1. **BREACH CONTRACT;**
2. **FRAUD;**
3. **CONVERSION;**
4. **MONEY HAD AND RECEIVED;**
6. **UNFAIR BUSINESS PRACTICES;**
7. **BREACH OF CONVENANT OF GOOD FAITH AND FAIR DEALING;**
8. **RESTITUTION AND UNJUST ENRICHMENT;**
9. **RESCISSION;**
10. **BREACH OF FIDUCIARY DUTY; AND**
11. **ACCOUNTING; AND**
12. **DEMAND FOR INSPECTION CORPORATE RECORDS**

COME NOW, Plaintiffs CHINA SHENYANG HONGQIAO OIL PRODUCTION CO., LTD., a Chinese corporation; ZHANG YONGSHENG, an individual; and LU GUOJIE, an individual (collectively "Plaintiffs"), for causes of action against named ATLANTIC VENTURES LLC, an Pennsylvania corporation; D2HEALTHCOACH, LLC, a Pennsylvania limited liability company; CAER VISION TECHNOLOGY CENTER INC., a Delaware corporation; CTCI, LLC, a Pennsylvania limited liability company; CAERVISION GROUP, INC., a Maryland corporation; CAERVISION CORPORATION; a Maryland corporation; CAERVISION, a Maryland corporation; JACK ZHANG, an individual; and JULIET HONG ZHANG, aka JULIET LUO, an individual, and each of them (collectively "Defendants"), complain and allege as follows:

**THE PARTIES**

1. Plaintiff CHINA SHENYANG HONGQIAO OIL PRODUCTION CO., LTD. ("HONGQIAO") is a Chinese corporation, located in Shengyang, China.

2. Plaintiff ZHANG YONGSHENG ("MR. ZHANG") is a citizen of the People's Republic of China, who is now residing in this judicial district.

3. Plaintiff LU GUOJIE ("MS. LU") is a citizen of the People's Republic of China, who is now residing in this judicial district.

4. Upon information and belief, Defendant ATLANTIC VENTURES LLC ("ATLANTIC") is a Pennsylvania limited liability company with its principal place of business located at 2502 Urbana Pike, Ijamsville, MD 21704.

5. Upon information and belief, Defendant D2HEALTHCOACH, LLC ("D2HEALTH") is a Pennsylvania limited liability company with its principal place of business located at 2502 Urbana Pike, Ijamsville, MD 21704.

6. Upon information and belief, Defendant CAERVISION TECHNOLOGY CENTER INC. is a Delaware corporation, with its principal place of business located at 2502 Urbana Pike, Ijamsville, Maryland 21704.

//

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

7. Upon information and belief, Defendant CTCI, LLC ("CTCI") is a Pennsylvania limited liability company, with its principal place of business located at 2502 Urbana Pike, Ijamsville, Maryland 21704.

8. Upon information and belief, Defendant CAERVISION GROUP, INC. is a Maryland corporation with its principal place of business located at 2502 Urbana Pike, Ijamsville, MD 21704.

9. Upon information and belief, Defendant CAERVISION CORPORATION is a Maryland corporation with its principal place of business located at 2502 Urbana Pike, Ijamsville, MD 21704.

10. Upon information and belief, Defendant CAERVISION is a Maryland corporation with its principal place of business located at 2502 Urbana Pike, Ijamsville, MD 21704.

11. Defendants ATLANTIC, D2HEALTH, CaerVision Technology Center Inc., CTCI, CaerVision Group, Inc., CaerVision Corporation and CaerVision are hereinafter collectively referred to as the "CaerVision Defendants".

12. Defendant JACK ZHANG ("JACK") is an individual who at various times mentioned herein was/is an officer, director or agent of the CaerVision Defendants.

13. Defendant JULIET HONG ZHANG, aka JULIET LUO ("JULIET") is an individual who at various times mentioned herein, was/is an officer, director or agent of the CaerVision Defendants.

14. Upon Information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants JACK and JULIET, on the one hand, and the CaerVision Defendants, on the other hand, such that any individual and separateness between JACK and JULIET, on the one hand, and the CaerVision Defendants, on the other hand, have ceased to exist, and Defendants JACK and JULIET are the alter egos of the CaerVision Defendants in that the CaerVision Defendants are, and at all times herein mentioned were mere

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

shells, instrumentalities and conduits through which Defendants JACK and JULIET carried on their business and were so inadequately capitalized that, compared with the business to be done by the CaerVision Defendants, and the risks of loss, their capitalization was illusory. JACK and JULIET completely controlled, dominated, managed and operated the CaerVision Defendants and commingled the assets of each to suit the convenience of JACK and JULIET and to evade payment of the obligations owed to creditors of the CaerVision Defendants.

15. Adherence to the fiction of the separate existence of JACK and JULIET, on the one hand, and the CaerVision Defendants, on the other hand, would permit an abuse of the corporate privilege and would sanction fraud and promote injustice in that JACK and JULIET have perpetrated fraudulent acts in the names of the CaerVision Defendants and never taken the steps to maintain the corporate standing of the CaerVision Defendants.

16. Upon information and belief, each of the Defendants sued herein was the partner, agent, and/or employee of each of the remaining Defendants, and was at all times acting within the purpose and scope of such partnership, agency and employment.

## VENUE AND JURISDICTION

17. MS. LU and MR. ZHANG are residents of Orange County, California. A substantial portion of the acts that gave rise to the present claims occurred in Orange County. While in Orange County, MS. LU and MR. ZHANG contacted Defendants and entered into agreements with them regarding investing their money in the United States for the purpose of obtaining permanent resident status. Defendants directed communications and documents to MS. LU and MR. ZHANG in Orange County. MS. LU and MR. ZHANG and the Defendants had communications, including via e-mails and telephone calls, with each other while MS. LU and MR. ZHANG resided in Orange County.

//

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

18. This Court has jurisdiction of Plaintiffs' claims pursuant to U.S.C. § 1332. The aggregate amount in controversy is over well in excess of the $75,000 minimum jurisdictional amount. There is diversity between the parties as Plaintiffs are domiciled either in China or in California, while Defendants are domiciled in various states in the U.S. other than California, including Pennsylvania and Maryland.

19. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental subject matter jurisdiction as the facts of this case form part of the same case or controversy under Article III of the U.S. Constitution.

20. The Court has general and/or specific personal jurisdiction over each of the Defendants. California's long arm statute - California Code of Civil Procedure section 410.10 - permits the exercise of personal jurisdiction on any basis not inconsistent with the California Constitution or the U.S. Constitution.

21. This Court has personal jurisdiction over all of the aforementioned Defendants because a substantial portion of the unlawful conduct that gives rise to these claims occurred in California.

22. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1397(b)(2) in that a substantial portion of the unlawful conduct that gave rise to these claims occurred in the Central District of California.

## FACTUAL ALLEGATIONS

23. Plaintiffs hereby incorporate by reference all prior allegations as though fully set forth herein.

24. In or around the early part of 2013, Plaintiffs participated in an immigration promotion held by a Chinese based company called Shengyang Everbright Immigration Business Development Co., Ltd. ("Everbright") which was operated by Shi Yafeng ("Mr. Shi").

//

//

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

25. Shortly thereafter, Everbright introduced Plaintiffs to JACK and JULIET. JACK and JULIET purported to assist foreigners in obtaining United States visas by way of opening and operating investment businesses.

26. Plaintiffs sought JACK and JULIET's assistance in obtaining a U.S. EB-5 visa. An EB-5 visa would require Plaintiffs to invest at least $500,000 in a business, which employed 10 full time employees, in a targeted employment area. Through the EB-5 visa program, MS. LU, MR. ZHANG, their respective spouses, and their respective children under 21 years of age could obtain their permanent residency green card once all requirements have been successfully met and approved by the USCIS.

27. In or around April 30, 2013, JACK and JULIET, through one of their companies, CTCI LLC, executed a joint venture agreement with MS. LU, for her to invest in a company called D2healthcoach, LLC, set up by CTCI, LLC for the purposes of acquiring the EB-5 visa and green card (the "EB-5 Agreement"). Attached as **Exhibit 1** is a copy of the EB-5 Agreement, executed on April 30, 2013, which is incorporated herein by reference.

28. In accordance to the EB-5 Agreement, Plaintiffs transferred a total $566,000 to an account controlled by JACK and JULIET, of which $500,000 was for the EB-5 investment and $66,000 was allegedly for start-up administrative expenses. In addition to the EB-5 Agreement, the parties also entered into ancillary agreements pursuant to which CTCI LLC agreed to refund MS. LU's investment and USCIS and immigration attorney fees should her EB-5 petition would be denied. Attached as **Exhibit 2** are copies of said ancillary agreements ("Ancillary EB-5 Agreements"), executed on April 30, 2013, which are incorporated herein by this reference.

29. Sometime thereafter, JACK and JULIET informed Plaintiffs that it could take up to two (2) years or so before the EB-5 immigration application is processed. As a result, they suggested advised MR. ZHANG to apply for a L-1

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

visa. According to JULIET, the processing time for a L-1 immigration application was faster than a EB-5 immigration application, and thus, MR. ZHANG's child would be able to attend a U.S. school sooner.

30. The L-1 visa is a non-immigrant visa and is available for employees of an international company with offices in both the United States and abroad. The visa allows such foreign workers to enter into the U.S. after having worked abroad for the company for at least one continuous year. The L-1 visa may legally be used as a stepping stone to a U.S. green card.

31. In or around May 8, 2013, CTCI executed an investment agreement with MR. ZHANG for MR. ZHANG to invest in a company called ATLANTIC VENTURES, LLC for the purpose of acquiring the L-1 visa and green card (the "L-1 Agreement"). Attached as **Exhibit 3** is a copy of the L-1 Agreement, executed on May 8, 2013, which is incorporated herein by this reference.

32. Plaintiffs were initially uneasy about operating a company in the United States, but JULIET assuaged their concerns by stating that JACK and JULIET, through their company CTCI LLC, could help manage ATLANTIC such that Plaintiffs would not need to personally manage the company.

33. In March 2014, MR. ZHANG transferred approximately $140,000 to CTCI, of which $110,000 was to be invested into ATLANTIC. The remaining $30,000 would be used for paying administrative and legal fees. In addition to the L-1 Agreement, PLAINTIFF ZHANG and CTCI, LLC entered into ancillary agreements whereby CTCI LLC agreed to return the $110,000 plus unused fees paid to the immigration attorney and USCIS if the petition for the L-1 visa was denied. Attached as **Exhibit 4** are copies of the ancillary L-1 Agreements ("Ancillary L-1 Agreements"), executed on May 8, 2013, which are incorporated herein by reference.

//

//

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

34. In or around July of 2014, MR. ZHANG received his L-1 visa, which would expire on May 9, 2015. His wife, MS. LU and their child's would not expire until 2016.

35. In or around December of 2014, JACK and JULIET recommended to Plaintiffs that they should close down D2HEALTH due to the high cost of staffing the EB-5 company, which required the employment of 10 full-time employees. JACK and JULIET further recommended that the $500,000 investment that was allegedly invested into D2HEALTH be transferred to ATLANTIC and that MR. ZHANG should now apply for an EB-1C visa, which is an employment-based immigrant visa specifically for managers and executives.

36. On December 23, 2014, MR. ZHANG, on behalf of HONGQIAO, executed a new EB-1C/L-1 Joint Venture Agreement with CTCI (the "Joint Venture Agreement"). Attached as **Exhibit 5** is a copy of the Joint Venture Agreement, executed on Dec. 23, 2014, which is incorporated herein by this reference.

37. The Joint Venture Agreement would require MS. LU to lend the $500,000 she invested in D2HEALTHCOACH to HONQIAO and, in turn, HONQIAO would invest the $500,000 into ATLANTIC. The Joint Venture Agreement also required CTIC to submit an application for a EB1-C immigration visa for MR. ZHANG.

38. In connection with the Joint Venture Agreement, the parties also entered into various ancillary agreement pursuant to which CTCI agreed to refund the entire investment to Plaintiffs should the L-1 and/or EB1-C petition(s) be denied. Attached as **Exhibit 6** are copies of the ancillary agreements to the Joint Venture Agreement ("Ancillary Joint Venture Agreements"), executed on Dec. 23, 2014, which are incorporated herein by this reference.

39. In reliance of these representations from CTCI, JACK, and JULIET, MS. LU agreed to have her $500,000 investment in D2HEALTHCOACH be transferred to CTCI for the purpose of investing the funds into ATLANTIC.

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

40. Plaintiffs were never provided any documentation from CTCI showing that the $500,000 had actually been invested into ATLANTIC.

41. In or around early 2015, in accordance to the Joint Venture Agreement, CTCI paid MR. ZHANG and MS. LU a total of $110,000 in salary for 2014 and 2015 years. According CTCI, the $30,000 for administrative fee was non-refundable.

42. Throughout 2015, MR. ZHANG held a number of video conferences and teleconference calls with JACK and JULIET and their employees for the purpose of understanding ATLANTIC's operations and finances. During these meetings, JACK, JULIET and their employees would always confirm that everything was fine with ATLANTIC.

43. Despite Plaintiffs repeated requests to review ATLANTIC's corporate documents including its financials, JACK and JULIET always provided an excuse, in not having the documents readily available.

44. On or around May 9, 2015, MR. ZHANG obtained a two year renewal of his L-1 visa. As such, his L-1 visa would expire on May 9, 2017.

45. Throughout 2016, Plaintiffs continued to contact JACK and JULIET in order to find out more details about ATLANTIC's financials and operations, but JACK and JULIET rarely answered Plaintiffs' calls. During the same period of time, Plaintiffs requested from JACK, and JULIET that they be able to meet ATLANTIC's partners and employees, but JACK and JULIET never arranged for such a meeting.

46. On or around March 21, 2016, JACK and JULIET allegedly prepared and filed a, I-140 green card application form for MR. ZHANG.

47. After several months, MR. ZHANG inquired as to the status of the I-140 application, to which JACK and JULIET repeatedly responded that they had no answer and that they would have to wait for USCIS's response.

//

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

48. Shortly thereafter, MR. ZHANG and Mr. Shi of Everbright visited JACK and JULIET's office, which was now located in Maryland. At that time, JACK and JULIET admitted that ATLANTIC's financial condition was poor claimed to have been working to turnaround the business.

49. In February of 2017, in anticipation of the May 9, 2017 L-1 renewal application, Plaintiffs asked JULIET to start gathering and compiling ATLANTIC's tax documents. Plaintiffs were told that the documents would not be ready until March.

50. In March of 2017, when Plaintiffs called, JULIET stated that the ATLANTIC was not doing well. In fact, ATLANTIC was doing so poorly that all of its employees had been terminated and the employees were not working and the company did not even bother to file its taxes.

51. JULIET claimed that JACK's mistress ran off with the ATLANTIC's funds. She suggested that Plaintiffs go after JACK if Plaintiffs wanted their money back.

52. Plaintiffs called the New York immigration attorney handling their immigration applications, but he would not speak with Plaintiffs. Instead, he would only speak through JULIET.

53. Afterwards, Plaintiffs hired a California immigration attorney and asked that the California immigration attorney be substituted-in to handle their case. The New York immigration attorney, originally retained by JACK and JULIET, would not turn over Plaintiffs' file without either JACK or JULIET's authorization to transfer the case to California.

54. On April 23, 2017, Plaintiffs again requested from JULIET, documents for the L-1 renewal. Again, JULIET made excuses as to why she was unable to provide ATLANTIC's corporate documents or bank records.

55. It was not until May 4, 2017 that JULIET finally provided some of ATLANTIC's documents and financial report to the California immigration

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

attorney. After review of the documents, the California immigration attorney determined that documents provided were woefully inadequate for the purpose of obtaining a green card and that the entire investment was a sham.

56. Plaintiffs again made several demands to see ATLANTIC's corporate documents, but JULIET continued provide excuses after excused as to why the records were not available. Plaintiffs further requested documents that are requested by the USCIS in order to process their application. To this day, Plaintiffs have not received the vast majority of the records sought. Moreover, it appears that Plaintiffs are now unlikely to be issued immigration visas from the USCIS as the Defendants have not used the funds in a manner required by the USCIS.

57. Despite their demands, Plaintiffs have not received a return of their investment and fees paid to the Defendants.

**FIRST CAUSE OF ACTION**

**(Breach of Written Contract Against Defendants CTCI, CaerVision, CaerVision Technology Center Inc. and ATLANTIC)**

58. Plaintiffs re-allege and incorporate herein by reference the above paragraphs of this Complaint as if set forth here in full.

**Breach of the EB-5 Agreements**

59. Pursuant to the EB-5 Agreement and Ancillary EB-5 Agreements CTCI agreed to: (i) assist MS. LU in obtaining her EB-5 immigration visa through the creation of a new business enterprise - D2HEALTHCOACH; (ii) keep MS. LU's investment in a designated checking account set-up especially for the business and that the account would be kept separate and apart from any other accounts; and (iii) refund MS. LU's $500,000 investment, plus $66,000 in costs, if, for any reason, MS. LU did not receive a green card as a result of her investment.

60. Defendant CTCI breached the EB-5 Agreement and the Ancillary EB-5 Agreements by failing to obtain a green card for MS. LU, by failing to keep the

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

accounts separate from other accounts maintained by CTCI and by failing to refund MS. LU's investment of $500,000 plus $66,000 in fees and costs.

**Breach of the L-1 Agreements**

61. Pursuant to the L-1 Agreement and Ancillary L-1 Agreements: (i) MR. ZHANG was to have received an L-1 visa through Plaintiffs' $110,000 investment into ATLANTIC, which was to have facilitated MR. ZHANG's obtainment of a green card and allowed Plaintiffs to travel to the United States while their immigration visas were pending; (ii) ATLANTIC agreed to keep Plaintiffs' investment in a designated account and use the funds only with MR. ZHANG's authorization; and (iii) CTCI agreed to refund the investment and any unused portion of the fees and costs to MR. ZHANG if he, or his family, was not issued a green card.

62. ATLANTIC breached the L-1 Agreement by: (i) failing to provide adequate documentation to the USCIS in support of MR. ZHANG's L-1 visa application, thereby jeopardizing MR. ZHANG's ability to renew his L-1 visa; (ii) allowing MR. ZHANG's investment funds to be comingled with funds in accounts belonging to the various entities controlled by JACK and JULIET.

63. CTCI breached the L-1 Ancillary Agreements by refusing to refund Plaintiffs' funds.

**Breach of the Joint Venture Agreements**

64. Pursuant to the Joint Venture Agreement and Ancillary Joint Venture Agreements Defendants CTCI, CaerVision Technology Center Inc. and CaerVision agreed to: (i) keep the investment made by the Plaintiffs separate and that the funds may only be withdrawn in accordance and authorized by MR. ZHANG; (ii) assist MR. ZHANG in obtaining a green card through the EB-1C Visa; and (iii) refund Plaintiffs' investment if for whatever reason MR. ZHANG was unable to successfully obtain their EB-1C visa.

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

65. Defendants CTCI, CaerVision Technology Center Inc. and CaerVision breached their obligations under the Joint Venture Agreements and Joint Venture Ancillary Agreements by failing to keep Plaintiffs' money separate from other accounts owned and controlled by JACK and JULIET, by failing to obtain a green card for MR. ZHANG and for failing to refund Plaintiffs' funds.

66. Plaintiffs have at all times performed or were excused from performing the terms of the afore-mentioned agreements.

67. As a direct legal and proximate result of the Defendants' breaches described herein, Plaintiffs have suffered damages in excess of $600,000.

**SECOND CAUSE OF ACTION**

**(Fraud Against Defendants CTCI, CaerVision, ATLANTIC, CaerVision Technology Center Inc., D2HEALTH, JACK and JULIET)**

68. Plaintiffs re-allege and incorporate herein by reference the above paragraphs of this Complaint as if set forth herein in full.

69. From early 2013 through 2016, JACK and JULIET, as the authorized representatives of each of the CaerVision Defendants, falsely and fraudulently represented to Plaintiffs the following: (i) that they would invest Plaintiffs' money in a venture that could would enable them to immigrate into the United States; (ii) that the funds that Plaintiffs invested would be kept in a separate account and only used in furtherance of obtaining green cards for Plaintiffs; and (iii) that they would refund Plaintiffs' investment if Plaintiffs were unable to obtain green cards. These representations were incorporated into various contracts Defendants entered into with Plaintiffs, including the EB-5 Agreement, Ancillary EB-5 Agreements, L-1 Agreement, Ancillary L-1 Agreements, Joint Venture Agreement and the Joint Venture Ancillary Agreements (collectively the "Agreements") as obligations to be performed by one or more of the CaerVision Defendants.

70. At the time the CaerVision Defendants entered into the Agreements, however, they never intended to perform their obligations thereunder or otherwise

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

use the funds paid by Plaintiffs to assist Plaintiffs obtain green cards. Concealment of the intentions of the CaerVision Defendants was committed by JACK and JULIET and contrary to their explicit representations to Plaintiffs.

71. Had they known the Defendants' true intentions, Plaintiffs never would have entered into the Agreements and invested and paid over $706,000 to the various entities controlled by JACK and JULIET pursuant to said Agreements.

72. When Defendants discussed the terms of and entered into the Joint Venture Agreement and Joint Venture Ancillary Agreements, Defendants had no intention of ever performing thereunder. Rather, Defendants induced Plaintiffs to transfer their investment funds pursuant to the Joint Venture Agreement and Joint Venture Ancillary Agreements with the intent to defraud and deceive Plaintiffs and to keep Plaintiffs from discovering their fraudulent schemes.

73. Plaintiffs, at the time they entered into the Agreements with Defendants, believed Defendants intended to perform their obligations under the Agreements. Plaintiffs' reliance on Defendants' representations that they intended to perform their obligations pursuant to the Agreements was justified Plaintiffs had no reason to disbelieve Defendants and, in fact, trusted them since they were in a better position that Plaintiffs to ascertain the truth or falsity of such representations.

74. Plaintiffs, at the time the representations were made, could not have discovered, in the exercise of reasonable diligence that Defendants' representations were in fact false.

75. In reliance on the representations made by the Defendants, Plaintiffs were induced to, and in fact did transfer $706,000 to Defendants. Had Plaintiffs known the true facts and/or intentions of Defendants, Plaintiffs would not have transferred this sum of money.

76. As a direct, legal and proximate result of Defendants' actions, Plaintiffs have been damaged in an amount in excess of $706,000.

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

77. In doing the acts alleged herein, Defendants, and each of them, have acted with oppression, fraud, and malice. Such conduct constitutes wanton, willful, and despicable conduct that shocks the conscience of ordinary individuals thereby warranting the imposition of punitive damages.

**THIRD CAUSE OF ACTION**

**(Conversion Against all Defendants)**

78. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

79. Plaintiffs are, and at all times herein, were the rightful owners of $706,000 that was intended to be used towards obtaining U.S. green cards for Plaintiffs through the EB-1/L-1 visa programs.

80. Defendants wrongfully interfered with Plaintiffs' interests in the above described property by misappropriating the funds, rather than investing the funds with ATLANTIC as agreed upon.

81. Despite repeated demands, Defendants have refused, and continue to refuse, to return the funds to Plaintiffs.

82. As a direct and proximate result of Defendants' acts of conversion and deceit, Plaintiffs have been damaged in the sum to be proven at trial, including without limitation all compensatory damages, damages for the re-possession of the converted property and compensation for the time and money expended in pursuit of the converted property.

**FOURTH CAUSE OF ACTION**

**(Common Counts - Money Had and Received Against all Defendants)**

83. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

84. Since 2013, Defendants became indebted to Plaintiff in the sum of $706,000 for money had and received by Defendants, and each of them.

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

85. Neither the whole, nor any part of this sum has been repaid despite Plaintiffs' repeated demands to the Defendants for its return.

86. To date, Defendants owe a balance of $706,000 to Plaintiffs.

**FIFTH CAUSE OF ACTION**

**(Unfair Business Practices - California Business & Professions Code Section 17200, *et seq.* - Against all Defendants)**

87. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

88. Plaintiffs hereby bring a claim for Unfair Business Practices against Defendants pursuant to California Business & Professions Code section 17200, *et seq.*, including but not limited to the deprivation of money and property.

89. Defendants' unlawful, unfair and/or fraudulent business acts or practices include, but are not limited to: (i) failure to disclose the status of business created to procure the EB-5, EB1-C and L-1 visas including without limitation the status of employee hiring; (ii) failure to process all applications; (iii) failure to provide accounting; (iv) failure to return funds; (v) failure to honor terms of contracts; (vi) inducing Plaintiff under false facts to invest funds; (vii) inducing Plaintiffs to enter into Agreements to which Defendants had no intention of honoring; and (viii) fraudulently converting and diverting Plaintiffs' investment funds for their own use.

90. As a direct and proximate result of the above-mentioned acts of each Defendant, Plaintiffs have suffered and will continue to suffer substantial pecuniary losses and irreparable injury.

91. Defendants' willful and conscious disregard for Plaintiffs' rights and Defendants' egregious misrepresentations, concealment and breaches in contract have created unjust hardships for the Plaintiffs.

92. As a result of Defendants' wrongful, unlawful and/or unfair conduct, Plaintiffs are entitled to restitution of all monies paid to, and misappropriated by,

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

Defendants in order to restore Plaintiffs to their natural state prior to providing all aforementioned funds.

93. It has been necessary for Plaintiffs to retain the services of legal counsel to pursue this matter and Plaintiffs are entitled, pursuant to Code of Civil Procedure § 1021.5, to an award of attorneys' fees, interest, and costs incurred this action.

**SIXTH CAUSE OF ACTION**

**(Breach of Covenant of Good Faith and Fair Dealing Against all Defendants)**

94. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

95. Defendants owed a duty of good faith and fair dealing to Plaintiffs by virtue of Defendants' various contractual relationships with the Plaintiffs.

96. Defendants interfered with Plaintiffs' right to receive the benefits of the Agreements by, among other things: (i) failing to diligently pursue Plaintiffs' EB-5 and L-1 visas; (ii) failing to hire employees; (iii) fraudulently taking funds from Plaintiffs; and (iv) failing to provide an accounting.

97. Defendants willfully engaged in the foregoing conduct in bad faith, for the purpose of gaining unwarranted contractual and legal advantages and unfairly and unconscionably converting and utilizing Plaintiffs' funds for their own financial gain. The conduct was not authorized and was outside the reasonable expectations of the Plaintiffs.

98. The foregoing conduct was willful and not the result of mistake or inadvertence. As set for the above, Defendants intentionally and fraudulently induced Plaintiffs into believing this was a legitimate program for them to procure an EB-5 and/or L-1 visa and green card in the United States.

99. As a direct result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiff has been injured, and has suffered actual damages and monetary losses that are incalculable in the form of losing funds, lost

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

opportunity, ownership interest in the company, profits to be made therefrom, the use of the funds provided to Defendants and green cards issued by the USCIS.

100. Plaintiffs are entitled to recover their damages and other appropriate relief for the foregoing breaches of the implied covenant of good faith and fair dealing.

**SEVENTH CAUSE OF ACTION**

**(Restitution and Unjust Enrichment Against all Defendants)**

101. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

102. As alleged previously, Defendants have acted against the interests of Plaintiffs without authorization and have profited from such misconduct. They have gained and grown financially at the expense of Plaintiffs.

103. As a direct and proximate result of Defendants' misconduct, they have been unjustly enriched at the expense of Plaintiffs in a sum or not less than $706,000.

104. In order to prevent Defendants from being unjustly enriched at the their expense, Plaintiffs seek an order or judgment from this Court requiring Defendants to disgorge and turnover all monies they received from Plaintiffs, along with any and all revenues and profits earned from their misconduct.

**EIGHTH CAUSE OF ACTION**

**(Accounting Against all Defendants)**

105. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

106. Plaintiffs have requested a full and complete accounting with respect to their investment funds, and the business said funds were deposited into. Defendants have refused to provide an accounting for Plaintiffs' investment funds, the use or their whereabouts.

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

107. Defendants' failure to provide Plaintiff with a full and complete accounting is grounds for this Court to issue a Writ of Mandamus compelling Defendants to permit Plaintiff to inspect all Defendants' records and books. *See* generally, *Saline v Superior Court*, (2002) 100 Cal.App.4th 9009, 915 (overturning restrictions on disclosure of documents and providing a writ of mandate allowing petitioner complete access to records.)

**NINTH CAUSE OF ACTION**

**(Shareholder's Inspection of Book and Records Against ATLANTIC)**

108. Plaintiffs re-allege and incorporate herein by reference the allegations in the proceedings paragraphs of this Complaint as if set forth herein.

109. Plaintiffs have requested an examination of ATLANTIC's books and records including but not limited to, the bank accounts to show how Plaintiffs' investments were utilized).

110. Despite said requests, ATLANTIC has not provided access to the requested records.

111. ATLANTIC's failure to provide Plaintiffs with the requested records is grounds for this Court to issue a Writ of Mandamus compelling ATLANTIC to allow Plaintiffs to inspect all ATLANTIC's records including those of its bank accounts.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants for all causes of action as follows:

a. For compensatory damages in excess of $706,000;
b. For damages and repossession of converted property;
c. For compensation for the time and money expended in pursuit of the converted funds;

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783

d. For interest accrued on the money to be refunded at ten percent (10%) per annum;

e. For general, special and consequential damages according to proof;

f. For punitive damages in accordance with the Defendants' fraudulent behavior;

g. For the recovery of attorneys' fees associated with these causes of action;

h. Any and all other relief that the court deems proper.

Respectfully submitted,

ARDENT LAW GROUP, PC

Date: September 22, 2017

*/s/ Hubert H. Kuo*
Hubert H. Kuo
Jeffrey T. Gwynn
Attorneys for Plaintiffs CHINA SHENGYANG HONGQIAO OILY, PRODUCTION CO., LTD., ZHANG YONGSHENG, and LU GUOJIE

ARDENT LAW GROUP, PC
2301 Dupont Dr., Suite 510
Irvine, California 92612
Telephone: (949) 863-9782
Facsimile: (949) 863-9783